LEAH MORAN, individually                    )
and as executrix for the ESTATE             )
OF HEATHER GRACE BOONE                      )
LEVITSKY                                     )
                                             )
          Plaintiff,                         )
     v.                                      )
                                             )
POLK COUNTY, POLK COUNTY                     )
SHERIFF'S DEPARTMENT,                        )
TRANSYLVANIA COUNTY,                         )
TRANSYLVANIA COUNTY                          )     MEMORANDUM AND
DETENTION CENTER, DONALD                     )     RECOMMENDATION
HILL, in his official and individual         )
capacities, JOSHUA J. KUJAWA, in             )
his individual capacity, SHELLEY             )
STROUP, in her individual capacity,          )
KYLE PASSMORE, in his individual             )
capacity, JERRY MANN, in his                 )
individual capacity, MYLES B.                )
MCCRARY, in his individual                   )
capacity, ROBBIE WORTHY, in his              )
individual capacity, DAVID A.                )
MAHONEY, in his official and                 )
individual capacities, NICHOLE               )
BLACKWELL, in her individual                 )
capacity, UNKNOWN JOHN DOE                   )
EMPLOYEE OF TRANSYLVANIA                      )
COUNTY, in his individual capacity,          )
and UNKNOWN EMPLOYEES OF                     )
TRANSYLVANIA  COUNTY                         )
DETENTION CENTER, in their                   )
individual capacities,                       )
                                             )
          Defendants.                        )
                                             )
_____ )

This matter is before the Court on the following Motions:

1. Motion to Dismiss by Defendants Polk County, Transylvania County, Polk County Sheriff's Office, Transylvania County Detention Center, Donald Hill, David Mahoney, Joshua J, Kujawa, Shelley Stroup, Kyle Passmore, Jerry Mann, and Nichole Blackwell (Doc. 27) ("Sheriff and County Defendants");

2. Motion to Dismiss by Defendant Myles B. McCrary (Doc. 29); and

3. Motion to Dismiss by Defendant Robbie Worthy (Doc. 36).

These Motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). The issues have been fully briefed, and the Motions are ripe for ruling.

## I.     RELEVANT PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in this matter on October 29, 2018. (Doc. 1). All Defendants, except Defendant Worthy, filed motions to dismiss in response. (Docs. 16, 18).

On January 2, 2019, Plaintiff filed an Amended Complaint (Doc. 24).

The Sheriff and County Defendants filed their Motion to Dismiss, along with a supporting memorandum, on January 11, 2019 (Docs. 27, 28). Plaintiff subsequently filed a response in opposition (Doc. 33), and the Sheriff and County Defendants replied (Doc. 35).

Defendant McCrary filed his Motion to Dismiss along with a supporting memorandum on January 15, 2019 (Docs. 29, 30), and Plaintiff later filed a response in opposition (Doc. 34). No reply has been filed by Defendant McCrary.

Defendant Worthy filed his Motion to Dismiss along with a supporting memorandum on February 4, 2019 (Docs. 36, 37). Plaintiff responded in opposition (Doc. 38), and Defendant Worthy replied (Doc. 39).

## II. FACTUAL BACKGROUND

Plaintiff's Amended Complaint alleges as follows:

On November 27, 2016, Joshua J. Kujawa, an officer with the Polk County Sheriff's Office, arrested Heather Grace Boone Levitsky ("Levitsky") and charged her with child abuse, driving while impaired, driving while impaired – careless and reckless, and resisting arrest. Officer Kujawa observed unstable behavior by Levitsky, including vomiting and attempted self-harm, and transported her to St. Luke's Hospital, where it was noted that she was in the midst of a situational crisis, hysterical, and suffering from depression. Doc. 24 ¶¶ 30 – 32.

Levitsky was subsequently released from St. Luke's Hospital and transported to the Transylvania County Detention Center. Id. ¶ 34.

On November 28, 2016, Shelley Stroup, an officer at the Transylvania County Detention Center, interviewed Levitsky in connection with her

booking. Levitsky advised Officer Stroup that she was bipolar and suffered from depression. Officer Stroup noted these diagnoses, but when she conducted an initial custody assessment, she omitted information regarding Levitsky's mental health impairments. <u>Id.</u> ¶ 34.

On December 2, 2016, the Polk County Department of Social Services informed Levitsky that she would be allowed to pick up her daughter from daycare.[1] However, while Levitsky was on the way, she observed the child in a vehicle driven by the child's father, Michael Nicholson. Levitsky also noticed that the child was not properly restrained. <u>Id.</u> ¶ 35.

Levitsky then contacted the Columbus Police Department and requested a welfare check be performed for her child. She also followed Nicholson's car into the parking lot of the Polk County Sheriff's Office, where she was met by Officer Myles B. McCrary of the Columbus Police Department. <u>Id.</u> ¶ 36.

As Officer McCrary was speaking with Levitsky, he was contacted by Polk County Magistrate Jodi E. Everts, who advised him that he should arrest Levitsky for breaking and entering a motor vehicle and advised him that, if he did not, Nicholson would be allowed to take out a warrant for Levitsky's arrest. Officer McCrary arrested Levitsky and charged her with first-degree trespass. <u>Id.</u> ¶ 38.

_____

[1] It appears that Levitsky was released from the Transylvania County Detention Center at some point between November 28, 2016 and December 2, 2016.

At 6:03 PM that evening, Kyle Passmore, an officer with the Transylvania County Detention Center, interviewed Levitsky and completed a medical questionnaire, noting that Levitsky was bipolar and diagnosed with depression. Plaintiff alleges on information and belief that Officer Passmore ignored statements by Levitsky about her mental instability, did not pass along information about his assessment, and allowed Levitsky to be placed in unlawful solitary confinement. Id. ¶¶ 39 – 40.

Shortly thereafter, at 6:24 PM, Officer Robbie Worthy of the Polk County Sheriff's Office interviewed Levitsky and completed a medical questionnaire. He noted that Levitsky was being treated by a psychiatrist. Levitsky informed him that she was taking certain medications and had been hospitalized for mental health problems. Plaintiff alleges upon information and belief that Officer Worthy ignored the results of her questionnaire, failed to provide information regarding Levitsky's conditions, and allowed her to be placed in unlawful solitary confinement. Id. ¶¶ 41 – 42.

Plaintiff alleges that "at some point, upon information and belief," an unknown employee or contractor of the Transylvania County Detention Center or Transylvania County became aware of Levitsky's mental health condition and doubled her dose of the prescription drug Celexa, though that individual did not notify anyone of this action. Id. ¶¶ 43 – 44.

On December 5, 2016, Officer Jerry Mann of the Transylvania County

Detention Center conducted an initial custody assessment. He made no specific arrangements for Levitsky's care, did not note any "special managed concerns", and personally allowed her to be placed in unlawful solitary confinement, even though, as Plaintiff alleges upon information and belief, Levitsky specifically advised him of her serious medical condition. Id. ¶¶ 45 – 46.

The same day, the Polk County Department of Social Services advised Levitsky that her children were being removed from her custody. She also received a domestic violence protective order and a motion to adjust child support, which had been signed by Nicholson. Subsequently, Levitsky began to act erratically, and received an inmate citation at 2:30 PM that day. Id. ¶¶ 47 – 48.

At NOON on December 6, 2016, Nichole Blackwell, a corrections officer with the Transylvania County Detention Center, issued a second citation to Levitsky, who was then placed in solitary confinement. Id. ¶ 48. Plaintiff alleges that Blackwell failed to follow jail policies requiring officers who are supervising inmates in solitary confinement to maintain audio and visual contact with the inmates and perform four cell checks per hour. Id. ¶¶ 49 – 50. While in solitary confinement, Levitsky also had little contact with other jail staff, who likewise failed to perform the required checks. In addition, Levitsky's cell was improperly equipped with metal shelves and a bedsheet. Id. ¶¶ 51 – 52.

On December 8, 2016, Levitsky was found unresponsive in her cell, with one end of a bedsheet tied around her neck and the other tied to a metal shelf. Id. ¶ 62.

Transylvania County Emergency Medical Services responded, and Levitsky was transported to Transylvania Regional Hospital. After further evaluation, Levitsky was transferred to Mission Hospital where she died on December 9, 2016. Id. ¶¶ 26 – 29.

## III.   LEGAL STANDARD

The central issue in a motion to dismiss made pursuant to Rule 12(b)(6) is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). That is, while "detailed factual allegations" are not required, a claim must contain sufficient factual allegations to support the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Consumeraffairs.com, 591 F.3d at 256. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193.

In conducting this analysis, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Consumeraffairs.com, 591 F.3d at 253; Giacomelli, 588 F.3d at 192. The court, however, is not required to accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

## IV. DISCUSSION

The chart that follows represents an attempt to illustrate, in a succinct form, the various claims asserted in the Amended Complaint, taken in the light most favorable to Plaintiff.

The pending Motions to Dismiss do not pertain to all of Plaintiff's claims. Defendants Hill, Mahoney, and Blackwell are not seeking dismissal of all claims against them. In addition, the unknown John Doe Employees of Transylvania County Detention Center and the unknown John Doe Employee of Transylvania County have not been identified or responded to the Amended Complaint.

# CHART OF CLAIMS

| | Cruel and Unusual Punishment/8th Amendment | Right to Familial Relationship | *Monell* Claim | Wrongful Death |
|---|---|---|---|---|
| Polk County | | X | X | |
| Transylvania County | | X | X | |
| Polk County Sheriff's Office | | X | X | |
| Transylvania County Detention Center | | X | X | |
| Donald Hill (official capacity) | | X | X | Not Contested |
| Donald Hill (individual capacity) | X | X | | X |
| David A. Mahoney (official capacity) | | X | Not Contested | Not Contested |
| David A. Mahoney (individual capacity) | X | X | | X |
| Joshua J. Kujawa (individual capacity) | X | X | | X |

| | | | | |
|---|---|---|---|---|
| Shelley Stroup (individual capacity) | X | X | | X |
| Kyle Passmore (individual capacity) | X | X | | X |
| Jerry Mann (individual capacity) | X | X | | X |
| Myles B McCrary (individual capacity) | X | X | | X |
| Nichole Blackwell (individual capacity) | Not Contested | X | | Not Contested |
| Robbie Worthy (individual capacity) | X | X | | X |

"Not Contested" refers to a claim that appears to have been asserted by Plaintiff but is not challenged by the pending Motions.

### A. Motion to Dismiss by the Sheriff and County Defendants (Doc. 27)

#### 1. Polk County Sheriff's Office and Transylvania County Detention Center as Proper Parties.

The Sheriff and County Defendants argue that dismissal of the claims against the Polk County Sheriff's Office and the Transylvania County Detention Center is required because those entities may not be sued under North Carolina law. Doc. 28 at 9 – 10.

They are correct. Efird v. Riley, 342 F. Supp. 2d 413, 420 (M.D.N.C. 2004) ("There is no North Carolina statute authorizing suit against a county's sheriff's department."); Smith v. Cherokee Cty. Det. Ctr., No. 1:16-CV-39-FDW, 2016 WL 1420982, at *1 (W.D.N.C. Apr. 11, 2016) (Cherokee County Detention Center "is not a distinct legal entity capable of being sued. . .").

In addition, as Plaintiff's briefing does not address this issue, she is presumed to have abandoned these claims. See Sasser v. Safe Home Sec., Inc., No. 1:18CV746, 2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (failing to respond to an argument constitutes an abandonment of a claim)(collecting cases).

Therefore, the undersigned will recommend dismissal of all claims against the Polk County Sheriff's Office and the Transylvania County Detention Center.

## 2. First Claim: Eight Amendment Violation/§ 1983

### a. The Defendants at Issue

An initial issue regarding Plaintiffs' first claim is the identification of the parties Plaintiff has attempted to name. The Amended Complaint states that this claim is asserted against "defendants." Doc. 24 ¶¶ 64-67, 69.

In their opening brief, the Sheriff and County Defendants assume that Plaintiff's first claim is directed only at those Defendants who are individuals, and further that those persons are being sued in their individual capacities. Doc. 28 at 10-11.

A headnote in Plaintiff's opposition references "all the named defendants" but the text of Plaintiff's arguments only discusses Officers Kujawa, Stroup, Passmore, and Mann. Doc. 33 at 7 - 12. Thus, it appears that Plaintiff concedes her first claim is made only against the individual Defendants in their individual capacities.

For individual capacity liability under § 1983 to attach, a defendant must have "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)).

### b. Sheriff Donald Hill and Sheriff David Mahoney

The Sheriff and County Defendants argue that Plaintiff does not reference any direct personal involvement by Donald Hill and David Mahoney,

who were the Sheriffs of Polk County and Transylvania County, respectively, at the time of Levitsky's death, and therefore that the individual capacity claims against the Sheriffs should be dismissed. Doc. 28 at 12.

Plaintiff has not responded to this argument and therefore is presumed to have conceded or abandoned the issue.

Consequently, the undersigned will recommend that Plaintiff's first claim as against Donald Hill and David Mahoney individually be dismissed.

c.    Joshua Kujawa and Shelley Stroup

The Sheriff and County Defendants argue that neither Officer Kujawa nor Officer Stroup are alleged to have been involved in the actions that led to Levitsky's death, and similarly that the actions of Officers Kujawa and Stroup could not have been a proximate cause of Levitsky's death. Doc. 28 at 13-15.

"[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (internal quotation marks omitted).

Plaintiff alleges that Officer Kujawa arrested Levitsky on November 27, 2016, witnessed her erratic behavior, and transported her to St. Luke's hospital, but made no report about her mental status. Doc. 24 ¶¶ 30-33. She was subsequently released from St. Luke's and transported to the Transylvania County Detention Center, though Plaintiff does not identify who transported her. Id. ¶ 34.

Officer Stroup's involvement occurred the next day, November 28, 2016, when she interviewed Levitsky as part of the booking procedure. Plaintiff alleges that Levitsky advised Officer Stroup that she was bipolar and suffered from depression, and that Officer Stroup conducted an initial custody assessment, but failed to check any of the boxes relating to Levitsky's medical condition. Id.

These allegations are not sufficient to state a claim against Officers Kujawa and Stroup. Plaintiff's description of the events indicates that Officer Kujawa was aware of and concerned for Levitsky's well-being, to the point that he took her to the hospital. The Amended Complaint contains no allegations as to what, if anything, Officer Kujawa was told by hospital staff regarding Levitsky's status at the time she was released.

Further, to the extent that either of these officers did not document information concerning Levitsky's mental condition at the time of her first arrest, Plaintiff's allegations do not indicate how these omissions impacted Levitsky's treatment following her release and subsequent arrest. As discussed below, even without this information, Officer Passmore noted certain mental health issues when he completed a medical questionnaire after Levitsky was arrested on December 2.

Accordingly, the undersigned will recommend that Plaintiff's first claim as against Joshua Kujawa and Shelley Stroup be dismissed.

d. Kyle Passmore and Jerry Mann

The Sheriff and County Defendants argue there are no non-conclusory factual allegations that Officers Passmore and Mann were personally involved in the events leading up to Levitsky's death. Doc. 28 at 15-18.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that the defendant is liable for the misconduct alleged." A Society Without A Name v. Va., 655 F.3d 342, 346 (4th Cir. 2011) (internal citations omitted).

An inmate's right to adequate medical treatment is violated only when a jail official acts with deliberate indifference to a serious need.[2] See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)).

---

[2] Though Plaintiff cites to the Eighth Amendment, because Levitsky was a pretrial detainee, the Fourteenth Amendment applies. The distinction, however, does not appear to be material. See Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)).

According to Plaintiff's allegations, Transylvania County Detention Center Officers Passmore and Mann saw Levitsky after her arrest on December 2, 2016; Officer Passmore interviewed Levitsky that evening and Officer Mann conducted a custody assessment on December 5. Doc. 24 ¶¶ 39 – 40, 45 – 46.

When Officer Passmore interviewed Levitsky, he recorded on a medical questionnaire that Levitsky was bipolar and had been diagnosed with depression. In light of Plaintiff's other allegations, it appears this information was recorded independently and had not been forwarded by officers who had interacted with Levitsky previously. Though Plaintiff alleges that Officer Passmore failed to provide more information on the questionnaire or to provide "anyone" with information about Levitsky, and allowed Levitsky to be placed in unlawful solitary confinement, these allegations are conclusory. Plaintiff does not allege why the information about Levitsky's mental health that Officer Passmore did record was insufficient, particularly when an additional questionnaire was completed by Officer Worthy approximately 20 minutes later. Nor does Plaintiff describe how Levitsky's placement in solitary confinement on December 6 was attributable to Officer Passmore.

Officer Mann saw Levitsky on December 5, which was three days after Officer Passmore's interview. In contrast to the allegations concerning Officer Passmore, Plaintiff alleges that despite being specifically advised by Levitsky

16

of her conditions, Officer Mann disregarded Levitsky's statements, made no notes regarding any concerns or any specific recommendations regarding confinement, and "personally allowed" Levitsky to be placed in an improper solitary confinement cell. Doc. 24 ¶¶ 45 – 46.

These allegations do not state a claim for deliberate indifference by Officer Passmore but are sufficient to overcome the Motion to Dismiss by the Sheriff and County Defendants as to Officer Mann.

### 3. Second Claim: Right to Familial Relationship

The Sheriff and County Defendants argue next that Plaintiff's claim for violation of her civil rights to a family relationship is not recognized by law. Doc. 28 at 18-20.

The Fourth Circuit has declined to recognize a Fourteenth Amendment substantive due process claim for the loss of love and support of a family member. Shaw v. Stroud, 13 F.3d 791, 804 (4th Cir. 1994).

Plaintiff's second claim, which alleges that Defendants "deprived the Plaintiff of her right to enjoy continuing family relations with [Levitsky] as protected by the 14th Amendment to the United States Constitution." Doc. 24 ¶ 71, is such a claim. Further, Plaintiff's briefing does not address this issue.

Consequently, the undersigned will recommend dismissal of Plaintiff's second claim as to all the Sheriff and County Defendants.

4. Third Claim: Monell Claim/§ 1983

   a.   The Defendants at Issue

Plaintiff's Amended Complaint states that her third claim is being asserted against "the municipal defendants," Doc. 24 ¶ 74, a reference the undersigned interprets to mean Polk County, Transylvania County, the Polk County Sheriff's Office, the Transylvania County Detention Center, Sheriff Hill in his official capacity, and Sheriff Mahoney in his official capacity.

As discussed above, the Polk County Sheriff's Office and the Transylvania County Detention Center are not amenable to suit. Further, the instant Motion to Dismiss does not seek dismissal of this claim against Sheriff Mahoney in his official capacity. Doc. 28 at 4. Thus, the Motion is contested as to Polk County, Transylvania County, and Sheriff Hill in his official capacity.

   b.   The Counties

Section 1983 imposes liability on any "person" who, acting under color of law, deprives another of rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Units of local government, including counties, are "persons" for purposes of this statute. See Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014); Miller v. Rutherford Cty., No. CIV. 1:08CV441, 2008 WL 5392057, at *5 (W.D.N.C. Dec. 19, 2008) ("Local governing bodies, such as counties are "persons" that can be sued directly under Section 1983 for monetary,

declaratory, or injunctive relief when alleged unconstitutional action executes governmental policy or custom.").

However, a local government may not be sued pursuant to § 1983 "for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs.of N.Y., 436 U.S. 658, 694 (1978). A local government "is liable only for its *own* illegal acts." Owens at 402 (emphasis in original). Such acts may be committed through the creation of customs, policies, or practices which, when followed by local officials, violate a plaintiff's constitutional rights. Id.

A policy or custom may be created in the following ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

> Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

In this case, Plaintiff alleges that the "municipal Defendants… maintained a policy, custom, or pattern and practice of promoting, facilitating and condoning improper, illegal, and unconstitutional techniques in caring for prisoners while in the custody of the PCSO and the TCDC staff, and of failing to adequately train, supervise, or discipline PCSO and TCDC staff in connection with fundamental tasks implicating the constitutional rights of

suspects." Doc. 24 ¶ 74. Plaintiff goes on to identify the following actions in connection with the alleged policies:

> a. Receiving information indicating that [Levitsky] had a serious mental health condition and refusing to pass this information to necessary parties;
>
> b. Placing [Levitsky] in a solitary confinement cell which did not comport to North Carolina requirements and continually failing to maintain any type of voice or visual contact with [Levitsky];
>
> c. Failing to make inmate cell checks as required by official jailhouse policy;
>
> d. Other actions and omissions to be proved through discovery and at trial.

Doc. 24 ¶ 76.

The Sheriff and County Defendants argue that Polk County and Transylvania County ("Counties") are not responsible for the actions of the employees of their sheriffs' offices. In the context of that argument, they contend that the holding of Wilcoxson v. Buncombe County, 129 F. Supp. 3d 308 (W.D.N.C. 2014), which found that a North Carolina sheriff was a county's final policymaker for law enforcement purposes, should now be viewed in light of the subsequent decision of the North Carolina Supreme Court in Young v. Bailey, 368 N.C. 665 (2016). That case, the Sheriff and County Defendants say, has now made it "crystal clear that a Sheriff can never be the policymaker for

a County in North Carolina." Doc. 28 at 7-9.  Plaintiff disagrees and argues that <u>Wilcoxson</u> and <u>Young</u> are distinguishable. Doc. 33 at 5-6.

The undersigned does not find the Sheriff and County Defendants' arguments to be persuasive. First, they conflate two distinct ideas - whether a county can be liable for the actions of the employees of a sheriff's department and whether a sheriff can be a final policymaker for a county. To the extent the Counties argue they cannot be held liable indirectly based on acts of the employees of the Sheriffs' departments, they are correct. <u>See e.g.</u>, <u>Landry v. North Carolina</u>, 2011 WL 368-2788 (county cannot be held liable for the actions of the sheriff or his employees). But this point is not relevant to Plaintiff's <u>Monell</u> claim, which is a claim of direct liability for the Counties' own alleged acts. Independent action by a municipality is "the *sine qua non* of <u>Monell</u> liability." <u>Owens v. Baltimore City State's Attorneys Office</u>, 767 F.3d 379, 402 (4th Cir. 2014).

Second, the Sheriff and County Defendants' argument regarding the status of North Carolina sheriffs as final policymakers, while more on point, paints with too broad a brush. The undersigned does not read <u>Young</u> as calling into question the continuing validity of the holding of <u>Wilcoxson</u>.  In <u>Young</u>, the North Carolina Supreme Court "agree[d] with the consistent holdings of the Court of Appeals that a deputy sheriff or employee of a sheriff's office is not a county employee." <u>Young v. Bailey</u>, 368 N.C. 665, 669–70 (2016).  This

conclusion fit within a line of previous cases rejecting the notion, discussed above, that a county could be liable for the actions of a sheriff's employees. See e.g., Little v. Smith, 114 F. Supp. 2d. 437 (2000) ("the sheriff, not the County, has final policymaking authority over the personnel decisions in his office"). On the other hand, at issue in Wilcoxson was whether, for purposes of a direct liability claim under Monell, the sheriff could be the county's final policymaker. See Wilcoxson at 315.

It must also be noted that several related issues have not been addressed, such as what duties counties and sheriffs have in the first instance with regard to persons detained in their jails and whether, to the extent counties have such duties, sheriffs can be the final policymakers for counties in connection with a claim under Monell relative to those duties.

Under North Carolina law, a sheriff "shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof." N.C. Gen. Stat. Ann. § 162-22.

Other statutory provisions indicate that counties are charged with providing medical care to persons housed in their detention facilities. N.C. G.S. § 153A-225 (Medical Care of Prisoners) requires each city or county that operates a local confinement facility, to develop a plan, "in consultation with appropriate local officials and organizations, including the sheriff . . .", to provide medical care for prisoners in that facility. N.C. Gen. Stat. Ann. § 153A-

225 (a); N.C. Gen. Stat. Ann. § 153A-217 (7). A facility that transfers a prisoner "shall provide the receiving facility with any health information or medical records the transferring facility has in its possession pertaining to the transferred prisoner." N.C. Gen. Stat. Ann. § 153A-225 (b1).

The parties have not discussed these authorities in substance[3] or their potential application to the types of unconstitutional policies alleged by Plaintiff here – 1) improper "techniques" in caring for detainees in the Counties' jails and 2) inadequate training, supervision, or discipline of jail staff. Doc 24 ¶ 74; see e.g., Wiley v. Buncombe Cty., 846 F. Supp. 2d 480, 486–87 (W.D.N.C.), aff'd, 474 F. App'x 285 (4th Cir. 2012) (since county has no control over the sheriff's employees and/or control over the jail, county cannot not be liable for the actions of sheriff or his detention officers for events that occur at the jail); Jones v. Harrison, No. 4:12–CV–90–D, 2013 WL 1452861, at *2 (E.D.N.C. Apr. 9, 2013) ("allegations relating to personnel, training, or other law enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county"); see also Jones v. Harrison, No. 4:12-CV-90-D, 2013 WL 1452861, at *2 (E.D.N.C. Apr. 9, 2013) ("The one topic pertaining to the county jail over which a county may exercise final policymaking authority deals with the medical care of jail inmates."); Vaught

---

[3] N.C. G.S. §153A – 225 (a) is referenced only in a footnote in the Sheriff and County Defendants' reply brief.

v. Ingram, No. 5:10-CT-3009-FL, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24, 2011) (denying county's motion to dismiss "because § 153A–225(a) appears to impose statutory duties on the county for the provision of medical care and emergency medical care"); Stockton v. Wake Cty., 173 F. Supp. 3d 292 (E.D.N.C. 2016) (denying motion for summary judgment by county).

The Court will not, on its own, delve into these complex issues and instead will address only the Sheriff and County Defendants' single argument - that Young has conclusively determined sheriffs may never be considered final policymakers for counties under any circumstances. Because, as discussed above, the Court does not so read Young, the undersigned will recommend that the Sheriff and County Defendants' Motion be denied as to the Counties.

### c.    Sheriff Hill in his Official Capacity

To the extent Plaintiff's Monell claim is asserted against Donald Hill in his official capacity, the Sheriff and County Defendants argue that Plaintiff has not identified a Polk County Sheriff's Office policy or custom that caused Levitsky's injuries. In particular, the Sheriff and County Defendants argue that all of the policies at issue pertained only to the Transylvania County Detention Center. Doc. 28 at 20-22.

Plaintiff argues in response that Sheriff Hill had a policy of sending all female prisoners to the Transylvania County Detention Center, that this policy

was in violation of state law, and that his office is liable for the conduct of the staff at the Transylvania County Detention Center. Doc. 33 at 13 – 14.

The question, for purposes of Plaintiff's <u>Monell</u> claim, is not whether Sheriff Hill had a policy that violated state law, but whether his policies, when implemented, violated Levitsky's federal rights for purposes of §1983. The only alleged policy Plaintiff attributes to Sheriff Hill is a policy of transferring female detainees. Plaintiff argues that policy was constitutionally impermissible because it routinely sent detainees to a separate facility – the Transylvania County Detention Center – which itself had "solitary confinement procedures that conflict[ed] with state and federal law." Doc. 24 ¶ 57.

Merely alleging, however, that Sheriff Hill knew the Transylvania County Detention Center had "improper procedures" that violated unidentified "federal law" is not sufficient to state a claim for violation of Levitsky's constitutional rights under §1983, and therefore dismissal of this claim will be recommended.

5. Fourth Claim: Wrongful Death

With respect to Plaintiff's wrongful death claim, the Sheriff and County Defendants argue that Plaintiff has failed to demonstrate that any moving

defendant[4] was personally involved in any act or omission that led to Levitsky's death. Doc. 28 at 22.

Plaintiff's response does not address this argument and therefore it is deemed to have been conceded or abandoned.

**B.** **Motion to Dismiss by Myles B. Mccrary (Doc. 29)**

1. Plaintiff's First, Second, and Third Claims

Officer McCrary, in his individual capacity, argues that Plaintiff has failed to state a claim against him because his only alleged involvement was his arrest of Levitsky several days before her death. Doc. 30 at 6.[5]

Plaintiff has alleged that Officer McCrary, an officer with the Columbus Police Department, encountered Levitsky on December 2, 2016 in the parking lot of the Polk County Sheriff's Office, whereOfficer McCrary arrested Levitsky and charged her with first-degree trespass. Doc. 24 ¶¶ 35 – 36, 38. In short, it appears that Officer McCrary's arrest represented the point at which Levitsky began the period of detention during which she later died.

Plaintiff acknowledges that Officer McCrary "was an early participant,"

_____

[4] The Motion does not seek dismissal of the wrongful death claims against Sheriff Hill and Sheriff Mahoney in their official capacities or against Nichole Blackwell. Doc. 28 at 4.

[5] Officer McCrary cites Plaintiff's first, second, and third claims. However, as Plaintiff's second claim is subject to dismissal as discussed above and Plaintiff's third claim is a claim against the "municipal defendants," the undersigned considers Officer McCrary's argument as being directed primarily against Plaintiff's first claim.

but argues that Officer McCrary had a duty to Levitsky since he made the choice to arrest her (and even to charge her with a different offense than the one referenced by the county magistrate). Plaintiff further argues that Officer McCrary had a duty to ensure Levitsky's basic safety because "it is reasonable to presume" that he was aware of her previous arrest, and that he breached his duty by failing to pass along information to other officers in Polk County or Transylvania County. Doc. 34 at 5 – 6.

This argument is without merit. Plaintiff's allegations in no way suggest that Officer McCrary's arrest of Levitsky was improper. In addition, Plaintiff may not base her claim on presumptions; facts sufficient to demonstrate plausibility are required. However, no factual allegations have been provided indicating that Officer McCrary was aware of Levitsky's prior arrest or mental issues.

### 2.  Qualified Immunity

Officer McCrary also argues briefly that, though he believes there is no basis for liability against him, if "there somehow could be, then he is entitled to qualified immunity." Doc. 30 at 7.

Plaintiff responds that a reasonable officer could not have presumed his conduct was lawful. Doc 34 at 6.

A qualified immunity analysis contains two steps - a determination of "whether the facts alleged or shown, taken in the light most favorable to the

plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right," and, if so, "whether the right at issue was 'clearly established' at the time of the officer's conduct." <u>Wilson v. Prince George's Cty., Md.</u>, 893 F.3d 213, 219 (4th Cir. 2018) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

Here, as noted, Plaintiff's Amended Complaint does not establish that Levitsky's federal rights were violated by Officer McCrary. Therefore, in the alternative, Officer McCrary is also entitled to qualified immunity. <u>See</u> <u>Graves v. Lioi</u>, ___ F.3d ___, 2019 WL 3143757, at *18 (4th Cir. 2019) ("Because the evidence was insufficient to support a finding that [the defendants] violated [the plaintiff's] rights, it follows that the district court properly concluded that they were entitled to qualified immunity.").

### 3.    Wrongful death claim

Officer McCrary finally argues that Plaintiff's wrongful death claim fails to state a claim against him.  Doc. 30 at 7.  The undersigned agrees.

According to Plaintiff's allegations, the only interaction Officer McCrary had with Levitsky occurred on December 2, 2016 at the Polk County Sheriff's Office.  Levitsky's death occurred several days later after her confinement in the Transylvania County Detention Center.

The undersigned will therefore recommend that all of Plaintiff's claims against Officer McCrary be dismissed.

## C.    Motion to Dismiss by Robbie Worthy (Doc. 36)

With respect to Plaintiff's first claim, Officer Worthy argues that the allegations against him are insufficient to state a claim upon which relief can be granted and that his act of completing Levitsky's medical questionnaire cannot be deemed a proximate cause of Levitsky's death days later at another jail.  He also argues that Plaintiff's fourth claim fails for the same reasons. Doc. 37 at 5-9, 11.

Plaintiff's Amended Complaint alleges that on December 2, 2016 at 6:24 PM, Officer Worthy of the Polk County Sheriff's Office interviewed Levitsky and completed a medical questionnaire for her, noting that she was being treated by a psychiatrist.  Levitsky informed him that she was prescribed Celexa, Klonopin, and Phentramine and that she had been hospitalized for mental health problems and was feeling "useless." Doc. 24 ¶ 41.

Plaintiff further alleges that Officer Worthy ignored the results of Levitsky's medical questionnaire, "failed to provide any information" related to Levitsky's mental health condition, and permitted her to be placed in solitary confinement.  Id. ¶ 42.

These allegations are insufficient to state a claim against Officer Worthy. Plaintiff does not describe how Officer Worthy ignored the results of the medical questionnaire that he had completed or describe how Officer Worthy failed to provide information relating to Levitsky's mental health condition. In

addition, Plaintiff does not describe how Levitsky's placement in solitary confinement on December 6 was attributable to Officer Worthy, or even how he as a Polk County officer had any authority concerning her confinement in the Transylvania County Detention Center.

Plaintiff's second claim as against Officer Worthy also fails for the reasons described as to the other moving Defendants.

The undersigned will therefore recommend the dismissal of all of Plaintiff's claims against Officer Worthy.

V.     RECOMMENDATIONS

Based on the foregoing, the undersigned **RECOMMENDS**:

1.  That the Motion to Dismiss by Defendants Polk County, Transylvania County, Polk County Sheriff's Office, Transylvania County Detention Center, Donald Hill, David Mahoney, Joshua J. Kujawa, Shelley Stroup, Kyle Passmore, Jerry Mann, and Nichole Blackwell (Doc. 27) be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.  That with respect to Plaintiff's First Claim (Cruel and Unusual Punishment), the Motion:

        i.  Be **GRANTED** as to the following Defendants in their individual capacities and such claim be **DISMISSED**: Donald Hill, David A. Mahoney, Joshua J. Kujawa, Shelley Stroup, and Kyle Passmore, and

ii. Be **DENIED** as to Defendant Jerry Mann in his individual capacity.

b. That with respect to Plaintiff's Second Claim (Right to Familial Relationship), the Motion be **GRANTED** as to the following Defendants and such claim be **DISMISSED:** Polk County, Transylvania County, Polk County Sheriff's Office, Transylvania County Detention Center, Donald Hill (in his official and individual capacities), David A. Mahoney (in his official and individual capacities), Joshua J. Kujawa, Shelley Stroup, Kyle Passmore, Jerry Mann, and Nichole Blackwell.

c. That with respect to Plaintiff's Third Claim (Monell), the Motion:

　　　i. Be **GRANTED** as to the following Defendants and such claim be **DISMISSED:** Polk County Sheriff's Office, Transylvania County Detention Center, and Donald Hill in his official capacity; and

　　　ii. Be **DENIED** as to Polk County and Transylvania County.

d. That with respect to Plaintiff's Fourth Claim (Wrongful Death), the Motion be **GRANTED** as to the following Defendants and such claim be **DISMISSED:** Donald Hill (in his individual capacity, David A. Mahoney (in his individual capacity), Joshua

J. Kujawa, Shelley Stroup, Kyle Passmore, and Jerry Mann.

4. That the Motion to Dismiss by Defendant Myles B. McCrary (Doc. 29) be **GRANTED** and all claims against Defendant McCrary be **DISMISSED**; and

5. That the Motion to Dismiss by Defendant Robbie Worthy (Doc. 36) be **GRANTED** and all claims against Defendant Worthy be **DISMISSED**.

Signed: September 3, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).