# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:18 CV 300 MR WCM

|  |  |  |
|---|---|---|
| **LEAH MORAN,** individually and as executrix for the ESTATE OF HEATHER GRACE BOONE LEVITSKY | ) ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | |
| **POLK COUNTY, POLK COUNTY SHERIFF'S DEPARTMENT, TRANSYLVANIA COUNTY, TRANSYLVANIA COUNTY DETENTION CENTER, DONALD HILL,** in his official and individual capacities, **JOSHUA J. KUJAWA,** in his individual capacity, **SHELLEY STROUP,** in her individual capacity, **KYLE PASSMORE,** in his individual capacity, **JERRY MANN,** in his individual capacity, **MYLES B. MCCRARY,** in his individual capacity, **ROBBIE WORTHY,** in his individual capacity, **DAVID A. MAHONEY**, in his official and individual capacities, **NICHOLE BLACKWELL,** in her individual capacity, **UNKNOWN JOHN DOE EMPLOYEE OF TRANSYLVANIA COUNTY**, in his individual capacity, **and UNKNOWN EMPLOYEES OF TRANSYLVANIA COUNTY DETENTION CENTER**, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| **Defendants.** | ) ) ) | |
| _____ | ) | |

1

This matter is before the Court on Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion to Amend," Doc. 48).[1]  Defendants have responded and Plaintiff has replied.  Docs. 49 & 50.

## I.  Relevant Background

This suit arises out of the death of Heather Grace Boone Levitsky ("Levitsky") while she was detained at the Transylvania County Detention Center ("TCDC").

On October 29, 2018, Plaintiff filed her original Complaint.  Doc. 1.  On January 2, 2019, Plaintiff filed a First Amended Complaint, which is currently the operative Complaint.  Doc. 24.

Following a September 20, 2019 ruling on multiple Motions to Dismiss, the following claims remain: (1) Cruel and Unusual Punishment/8th Amendment claims against Jerry Mann (in his individual capacity) and Nichole Blackwell (in her individual capacity); (2) a *Monell* claim against Polk County, Transylvania County, and Transylvania County Sheriff David A. Mahoney (in his official capacity); and (3) Wrongful Death claims against Polk County Sheriff Timothy Wright (in his official capacity),[2] Sheriff Mahoney (in

---

[1] Plaintiff did not file a separate brief in support of the Motion to Amend.

[2] On May 28, 2020, Timothy Wright, the new Sheriff of Polk County, was substituted for the prior Sheriff, Donald Hill.  Doc. 53.

2

his official capacity), and Nichole Blackwell (in her individual capacity). <u>See</u> Docs. 40 & 41.

Both the original and First Amended Complaint named an Unknown "John Doe" employee of TCDC who allegedly "served [Levitsky] with a DSS report and then failed to supervise her in her jail cell" as well as "Unknown Defendants John Doe employees" who were "employees or contractors of the [TCDC] and were providing medical care to inmates." Doc. 1, ¶¶ 23-24; Doc. ¶¶24, ¶¶ 24-25.

Formal, court-enforceable discovery began with the entry of a Pretrial Order and Case Management Plan on November 8, 2019. Doc. 45.

On May 1, 2020, Plaintiff filed the Motion to Amend, through which Plaintiff seeks leave to file her proposed Second Amended Complaint and to add Transylvania County Sheriff's Deputy Kim Hawkins ("Hawkins") and nurses Bruce Rasor ("Rasor") and Laura Boase ("Boase") (all in their individual capacities) as defendants in the place of the previously named "John Doe" defendants. <u>See</u> Doc. 48, ¶ 9 (asserting that two of the proposed defendants are "the medical workers who treated Ms. Levitsky" and the other "was the Deputy manning the control tower at the time of decedent's death"); <u>see also</u> Doc. 48-1, ¶¶ 20-22.[3] Specifically, Hawkins, Rasor, and Boase would be added

―――――――――――――
[3] In the Motion to Amend, Plaintiff asserts that allowing "the Second Amended Complaint will likely require a slight extension in the time allotted to file additional

3

for purposes of Plaintiff's claims for "cruel and unusual punishment in violation of the 8th Amendment" and wrongful death. Doc. 48-1, pp. 14-18.

Additionally, Plaintiff asserts that the proposed Second Amended Complaint "streamlines and clarifies the allegations against each Defendant, as well as removes allegations against previously dismissed Defendants" and "removes entirely Defendants who were already dismissed." Doc. 48, ¶ 10.

## II. Law and Analysis

When considering requests for leave to amend, courts are guided by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that leave to amend should be freely given when justice so requires, and "by the general policy embodied in the Federal Rules favoring resolution of cases on their merits." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980), cert. denied, 448 U.S. 911 (1980). More specifically, "[i]n the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. the leave sought

---

discovery against the new Defendants." Doc. 48, ¶ 13. Plaintiff further states that "[p]rior to commencing discovery, virtually all the facts and information was held solely by Defendants and otherwise unavailable to Plaintiff." Id. Plaintiff does not, however, explain why the Motion to Amend was not filed until May 2020 or why facts regarding the identity and alleged involvement of the proposed new defendants were not discovered earlier.

should as the rules require, be 'freely given.'" <u>Forman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); <u>Equal Rights Ctr. v. Niles Bolton Assocs.</u>, 602 F.3d 597, 603 (4th Cir. 2010) (citing <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)).

Defendants oppose the Motion to Amend based on futility. First, Defendants contend that the proposed Second Amended Complaint fails to state a claim against Rasor, Boase, or Hawkins. Doc. 49, pp. 3-6. Second, Defendants argue that the claims against Rasor, Boase, and Hawkins are barred by the statute of limitations. Doc. 49, pp. 7-9.

A futility review "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations … conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" <u>Glob. Locating Sys., LLC v. ShadowTrack 247, LLC</u>, No. 1:19-CV-00225-MR, 2020 WL 2114381, at *3 (W.D.N.C. May 4, 2020) (quoting <u>Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC</u>, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (internal quotations and alterations omitted)). In short, to deny a motion to amend on futility grounds, the Court must find that the "proposed amendment is clearly insufficient or frivolous." <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 510 (4th Cir. 1986) (citing <u>Davis</u>, 615 F.2d at 613).

## A. Sufficiency of Proposed Factual Allegations

### 1.    Rasor and Boase

#### a.    First Amended Complaint

In her First Amended Complaint, Plaintiff alleges that Decedent was originally arrested on November 27, 2016, was acting erratically, and was transported to St. Luke's hospital "in the midst of a situational crisis." Doc. 24, ¶¶ 30-32. Following Levitsky's release from St. Luke's, she was transferred to the Transylvania County Jail on November 28, 2016, where she was interviewed by Officer Shelly Stroup. Doc. 24, ¶ 34. Levitsky was subsequently released from the Transylvania County Jail and arrested a second time on December 2, 2016. Doc. 24, ¶¶ 35-38.

Plaintiff alleges that various officers employed by TCDC or the Polk County Sheriff's Office interviewed Decedent on December 2, 2016 and noted her mental instability. See Doc. 24, ¶¶ 39-42. Relevant to the Motion to Amend, Plaintiff alleges that "[a]t some point," an unknown employee or contractor of TCDC or Transylvania County "was made aware of Ms. Levitsky's mental health condition as well as the medications that she was prescribed. This contractor or employee altered Ms. Levitsky's Celexa prescription by doubling her dose. This type of increase is known to result in suicidal ideations." Doc. 24, ¶ 43.

### b. Proposed Second Amended Complaint

In the proposed Second Amended Complaint, Plaintiff alleges that Rasor "was, at all times relevant to this Complaint, an individual working for or at TCDC as a registered nurse" and that after Levitsky was evaluated by Officer Stroup on November 28, 2016, Rasor conducted "an initial medical determination" during which he "became aware or had knowledge that Ms. Levitsky suffered from bipolar disorder, depression, and anxiety. He was also informed that Levitsky took prescriptions for Citalopram Hydrobromide, Clonazepam, and Phentermine HCI." Doc. 48-1, ¶¶ 21 & 32. Plaintiff further alleges that "[a]t some point after that evaluation but prior to December 2, 2016, Ms. Levitsky was released from incarceration." Doc. 48-1, ¶ 33. That is, it appears that Rasor's "initial medical determination" occurred while Levitsky was in custody following her first arrest.

Plaintiff asserts that Boase "was, at all times relevant to this Complaint, an individual working for or at TCDC as a licensed practical nurse." Doc. 48-1, ¶ 22. Plaintiff alleges that Boase conducted a "medical interview and assessment" sometime on or after December 2, 2016 (i.e., following Decedent's second arrest) and that as a result of her interview and assessment, Boase "knew, or should have known, that Ms. Levitsky was prescribed Celexa, Klonopin, and Phentramine HCI...." Doc. 48-1, ¶ 40. The proposed Second Amended Complaint then alleges:

7

Following those assessments, Ms. Levitsky was given only one of her three necessary prescriptions. Ms. Levitsky's inmate record shows she was given only 40 mg of Celexa at intervals, when she was prescribed 20 mg by her normal physician. There is no record of any doctor prescribing or modifying her prescription from 20mg to 40mg. TCDC has no record of any medical professional with TCDC other than Defendant's [sic] Boase and Rasor interacting with Ms. Levitsky. No documentation has been provided by Defendant which shows who authorized the change in Ms. Levitsky's dosage.

This increased dosage was documented and signed by both Defendants Rasor and Boase. The record does not indicate dates the medication was given, the effective date or stop date for any medication, or any other medication given to Ms. Levitsky other than the doubled dosage of Celexa. Neither Defendant Rasor nor Boase are authorized to prescribe medication.

It is widely known among medical professionals that psychological medicines, including Ms. Levitsky's prescribed medications, should not be abruptly stopped, increased, or decreased, or it may lead to increase[d] suicidal ideation. By stopping two of Ms. Levitsky's medications and increasing the third, she was forced into a much higher risk of suicide by the Defendants and their policies, particularly in light of the legal situation developing regarding her children and criminal charges.

Doc. 48-1, ¶¶ 41-43.

For individual capacity liability under § 1983 to attach, a defendant must have "acted personally in the deprivation of the plaintiff's rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). An inmate's right to adequate medical treatment is

violated only when a jail official acts with deliberate indifference to a serious need.[4]  See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Estelle, 429 U.S. at 105–06). "[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (internal quotation marks omitted).

Here, the undersigned expresses no opinion as to whether Plaintiff, at a later stage, may be able to establish that either Rasor or Boase were deliberately indifferent.  However, as Plaintiff's proposed Second Amended Complaint alleges that Rasor and Boase were personally involved with changing Levitsky's medication dosage – specifically that they both "documented and signed" for the increased dosage of Celexa – the undersigned finds Plaintiff's proposed allegations against them to be sufficient for purposes of the Motion to Amend.

---

[4] Though Plaintiff cites to the Eighth Amendment, because Levitsky was a pretrial detainee, the Fourteenth Amendment applies. The distinction, however, does not appear to be material.  See Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)).

## 2. Hawkins

### a. First Amended Complaint

As noted above, in the First Amended Complaint, Plaintiff named an Unknown "John Doe" employee of TCDC who allegedly "served [Levitsky] with a DSS report and then failed to supervise her in her jail cell." Doc. 24, ¶ 24.

Additionally, Plaintiff alleged that following Levitsky's receipt of a Polk County Department of Social Services report stating that her children were being removed from her custody, a domestic violence protective order, and a motion to adjust child support, "Ms. Levitsky began to act erratically" and that "[o]n December 5, 2016, at 2:30 p.m., Ms. Levitsky was issued an inmate citation by Officer K. Hawkins." Doc. 24, ¶ 48.

Deputy Hawkins, however, was not named as a defendant in the First Amended Complaint.

### b. Proposed Second Amended Complaint

In the proposed Second Amended Complaint, Plaintiff alleges that Hawkins "was, at all times relevant to this Complaint, a deputy with the Transylvania County Sheriff's Office." Doc. 48-1, ¶ 20. Plaintiff further alleges that "[w]hile incarcerated, deprived of her normal medications, Ms. Levitsky began to act erratically" and that on December 5, 2016, at 2:30 p.m., Ms. Levitsky was issued an inmate citation by Office K. Hawkins." Doc. 48-1, ¶ 48.

10

Finally, Plaintiff asserts that while "manning the central operations center," Hawkins "failed to maintain constant audio/video contact with Ms. Levitsky. Had she maintained that supervision as required by law and recommended by a fellow officer, Ms. Levitsky would not have been able to hang herself." Doc. 48-1, ¶ 52.

Plaintiff's allegation – that Hawkins "failed to maintain" required contact with Levitsky – runs close to being too conclusory to support a claim. The proposed Second Amended Complaint does not specify or further explain the "recommendation by a fellow officer" which Hawkins allegedly failed to follow. However, considering the standard for denying a motion to amend based on the sufficiency of the proposed allegations, the undersigned finds that Plaintiff's proposed allegations against Hawkins are not "clearly insufficient." See Johnson, 785 F.2d at 510.

## B. Timeliness of the Proposed Claims

"Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000); Everett v. Prison Health Services, 412 Fed. Appx. 604, 605 (4th Cir. 2011) (unpubl.) (per curium) ("Where a proposed amendment is made beyond the statute of limitations and it would not relate back to the original complaint, such an amendment would be futile.").

Levitsky died on December 9, 2016. See Doc. 24, ¶ 29.

Plaintiff filed her original Complaint on October 29, 2018. Doc. 1.

Defendants assert that "[a]ny complaint filed against Hawkins, Rasor, and Boase needed to be filed by December 9, 2018, or at the latest, December 9, 2019" and that because the Motion to Amend was filed on May 1, 2020, it is untimely and therefore futile. Doc. 49, p. 7.[5] Plaintiff does not dispute that "a claim barred by the applicable statute of limitations may be deemed futile," but argues that the proposed claims are not untimely as they relate back to the filing of the original complaint. Doc. 50, pp. 5-8.

"When proposed claims in an amendment are barred by the statute of limitations, Rule 15(c) provides for the relation back of amendments to the original pleading under certain circumstances." Pittman, 209 F.3d at 317. "Although the statute of limitations is an affirmative defense that must be established by the defendant, when relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied." Covey v. Assessor of Ohio County, 666 Fed. Appx. 245, 248 (4th Cir. 2016) (unpubl.) (citing Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.

_____

[5] In North Carolina, the statute of limitations for actions under 42 U.S.C. § 1983 is three years. Love v. Alamance County Bd. of Educ., 757 F.2d 1504, 1506 (4th Cir.1985); see also Battle v. Ledford, 912 F.3d 708, 713 (4th Cir. 2019) ("The Supreme Court has directed that we apply a state's 'statute of limitations governing general personal injury actions' when considering § 1983 claims.") (quoting Owens v. Okure, 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). The applicable statute of limitations for a wrongful death action is two years. N.C.G.S. § 1-53(4). A cause of action for wrongful death does not accrue until the date of death. Id.

2007); W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1200 (4th Cir. 1989)).

Federal Rule of Civil Procedure 15(c)(1) provides, in applicable part, that an amendment relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

"Stated in the specifics of the Rule, an amendment relates back only when it changes a party or the naming of a party, when it arises out of the same transaction as that referred to in the original complaint, when it causes no prejudice to the new defendant in maintaining his defense, and when the new defendant should have known that it was the party that would have been sued but for a 'mistake.'" Goodman, 494 F.3d at 470 (emphasis in original). These requirements "assure that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation." Id. (internal citations omitted).

Here, Defendants contend that Plaintiff cannot establish the last requirement – that Rasor, Boase, or Hawkins knew or should have known that

this action would have been brought against them, but for a mistake.[6] Doc. 49, p. 8.

The focus of the relation-back inquiry is on the knowledge of and notice to the prospective defendant, not the plaintiff. Krupski v. Costa Crociere, 560 U.S. 538, 548, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010) ("The question ... is not whether [the amending party] knew or should have known the identity of ... the proper defendant, but whether [the potential defendant] knew or should have known that it would have been named as a defendant but for an error."); Everett v. Prison Health Services, 412 Fed. Appx. at 605, n. 3 ("We hold that the district court properly based its Rule 15(c) ruling on the inadequacy of notice to [potential defendant], and not on an assessment of the knowledge possessed by [the amending party].").

Such notice must be received by the proposed defendant within the period provided for by Rule 4(m). See Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010); Wilkins v. Montgomery, 751 F.3d 214, 225 (4th Cir. 2014). Rule 4(m) provides that generally a defendant must be "served within 90 days after the complaint is filed."

---

[6] Defendants do not assert arguments based on the other requirements for relation back, and the parties agree that the proposed claims against Hawkins, Rasor, and Boase arise out of the same transaction that formed the basis of the original complaint. See Doc. 49, p. 8 ("There is no dispute in this case that the claims in the SAC arise from the same conduct alleged in the initial Complaint").

14

"Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." W. Contracting Corp., 885 F.2d at 1201.

### 1.   Nature of the Claim

With respect to Rasor and Boase, in the original Complaint, Plaintiff named unknown John Doe defendants who provided medical care to inmates. Doc. 1, ¶ 24. Plaintiff additionally asserted that "defendants" "increased Ms. Levitsky's dose of Celexa which is known to result in suicidal ideations." Doc. 1, ¶ 47.[7] As the allegations against Boase and Rasor in the proposed Second Amended Complaint are similar, the "nature of the claim" against Boase and Rasor was apparent from the initial pleading.

Whether the "nature of the claim" against Hawkins was apparent is less clear. See W. Contracting Corp., 885 F.2d at 1201. In the initial Complaint Plaintiff alleged that a John Doe defendant "served [Levitsky] with a DSS report and then failed to supervise her in her jail cell." Doc. 1, ¶ 23; see also Doc. 24, ¶ 24. In the proposed Second Amended Complaint, however, Plaintiff

---

[7] Likewise, in the First Amended Complaint, Plaintiff alleged that an unknown "[e]mployee or contractor of Transylvania County" "altered Ms. Levitsky's Celexa prescription by doubling her dose." Doc. 24, ¶ 43. The undersigned notes this allegation because the First Amended Complaint was filed on January 27, 2019, which is within ninety (90) days of the filing of the initial Complaint, that is, the period referenced by Rule 4(m).

15

alleges that Hawkins was "manning the central operations center" and "failed to maintain constant audio/video contact with Ms. Levitsky." Doc. 48-1, ¶ 52. There is no allegation in the proposed Second Amended Complaint that Hawkins was the "John Doe" defendant that served Decedent with a DSS report. Cf. Doc. 48-1, ¶ 48 (alleging Hawkins issued an inmate citation on December 5, 2016 and that Decedent received DSS paperwork on December 8, 2016).

### 2. Identity of Interest or Notice

Plaintiff alleges that Hawkins was "at all times relevant to this Complaint, a deputy with the Transylvania County Sheriff's Office" and that Rasor and Boase were "working for or at TCDC." Doc. 48-1, ¶¶ 20-22.

Plaintiff does not provide factual allegations that Rasor, Boase, or Hawkins received actual notice of the litigation but argues instead that the Court should presume they had notice of Plaintiff's intention to assert claims against them in light of the small size of the TCDC and the fact that their conduct was mentioned in the original Complaint. See Doc. 50 at 7-8 ("In a facility as small as Transylvania County Detention Center, where only a few officers were working near or involved with Ms. Levitsky's suicide, every officer reasonably should have known they would be a party to the suit but for Plaintiff's mistake in knowing their name."). Under these circumstances, Plaintiff contends, "it strains reason to argue that the new Defendants would

not have had notice of the suit" Doc. 50 at 7; see also id. at 8 ("it is unfathomable that [Boase and Rasor] would not have learned of the suit).

The undersigned does not find Plaintiff's arguments to be persuasive.

A relationship between closely related corporate entities may support a finding that knowledge by one may be imputed to the other. See Krupski, 560 U.S. at 556 (noting that original defendant and proposed new defendant were related corporate entities with "very similar names" and that "[t]his interrelationship and similarity heighten the expectation that Costa Crociere should suspect a mistake has been made when Costa Cruise is named in a complaint that actually describes Costa Crociere's activities.") (citing, *inter alia*, Goodman, 494 F.3d at 473–475 (where complaint named parent company Praxair, Inc., but described status of subsidiary company Praxair Services, Inc., subsidiary company knew or should have known it had not been named because of plaintiff's mistake)); see also Wilkins, 751 F.3d at 225-26 (distinguishing situation of a parent and subsidiary corporation, and finding claims against individual medical professionals did not relate back where evidence in the record indicated proposed new defendants did not receive notice within the 4(m) period and there was no evidence that either proposed defendant "kept in touch" or "worked so closely" with defendant such that defendant's knowledge could be imputed).

Here, however, Plaintiff has not demonstrated that a similarly close relationship existed between the proposed defendants and the current Defendants such that the proposed defendants could fairly be charged with having the knowledge of the litigation held by the current Defendants.

Likewise, Plaintiff has not provided sufficient information regarding the interactions between the proposed defendants and others from which it may be presumed that they had knowledge of Plaintiff's claims. For example, Plaintiff does not provide any details about the size of the facility, identify which personnel knew of the litigation, or describe the frequency or content of communications within the facility regarding the litigation.

Finally, although Plaintiff asserts that "it is reasonable to presume" that Hawkins (and perhaps also Rasor and Boase) will employ the same defense counsel as the current Defendants (see Doc. 50, p. 8), there is insufficient information to presume that the proposed defendants received notice under a "shared attorney theory," which is based on the notion "that when an originally named party and the party sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Boatwright v. Good, No. 1:02cv209-C, 2003 WL 22231194, at * 2 (W.D.N.C. Aug. 6, 2003). The record is devoid of information to indicate that defense counsel communicated with the proposed defendants regarding the possibility that they would be named. See Stokes v.

<u>Harris</u>, No. 1:10CV935, 2013 WL 1212788, at * 7 (M.D.N.C. March 25, 2013) ("Defendants' counsel does not officially represent Officer Revels at this point, and there is no indication that Defendants' counsel communicated to Officer Revels that he may potentially be joined in this action within the [Rule 4(m)] time period. Thus, notice cannot be imputed to Officer Revels through the shared attorney theory.") (citing <u>Garvin v. City of Philadelphia</u>, 354 F.3d 215, 227 (3d Cir. 2003) ("[A] plaintiff must show that there was 'some communication or relationship' between the shared attorney and the John Doe defendant prior to the expiration of the [Rule 4(m)] time period in order to avail him or herself of the shared attorney method of imputing notice.")).

In short, Plaintiff argues that the proposed defendants' association with the TCDC and the possibility that they may, if joined, be represented by the same counsel mean *ipso facto* that the proposed defendants received sufficient notice of Plaintiff's claims, and within the necessary time frame. While it is possible that the proposed defendants did hear something about the litigation in this context, Plaintiff has not met her burden of coming forth with sufficient information to support a finding in this regard that would allow the proposed defendants to be joined and Plaintiff's claims to be deemed to relate back. <u>See</u> <u>Covey</u>, 666 Fed. Appx. at 248 ("Because Appellants failed to show that the assessors they sought to add as defendants had timely notice of the suit, as

required by Rule 15(c), we affirm the district court's denial of their request to amend.").

### C. Plaintiff's Other Proposed Amendments

Plaintiff correctly points out that "Defendants have made no argument against the Court granting leave to file the Amended Complaint or similar without the inclusion of the new Defendants." Doc. 50, p. 9. Plaintiff contends that even without adding Rasor, Boase, and Hawkins as defendants, she desires to amend her complaint "to streamline the litigation process with the clarified allegations." Id. As noted above, Plaintiff has stated that in addition to naming additional individual defendants, she also seeks leave to amend in order to clarify "the allegations against each Defendant," remove "allegations against previously dismissed Defendants," and remove "entirely Defendants who were already dismissed." Doc. 48, ¶ 10. Noting the lack of objection to this portion of Plaintiff's Motion to Amend, the undersigned will grant Plaintiff leave to file a Second Amended Complaint for that purpose.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion to Amend" Doc. 48) is **DENIED IN PART** and **GRANTED IN PART** as follows:

1. Plaintiff's Motion to Amend is **DENIED** to the extent Plaintiff seeks leave to amend to add claims against Rasor, Boase, and Hawkins.

2. Plaintiff's Motion to Amend is **GRANTED** to the extent Plaintiff seeks leave to amend to clarify allegations regarding already named Defendants, and to remove previously dismissed Defendants and allegations against those dismissed Defendants.

3. Plaintiff is **DIRECTED** to file a Second Amended Complaint, consistent with this Order, within fourteen (14) days.

Signed: July 17, 2020

W. Carleton Metcalf
United States Magistrate Judge